IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MARK ALEXANDER, JR., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:23-cv-606-O-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Mark Alexander, Jr. ("Alexander") applied for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied his application, deciding that he was not disabled. Alexander appealed, but the Social Security Appeals Council ("AC") rejected his request for review. Because there is no reversible error in the legal standards that the Administrative Law Judge ("ALJ") applied, and because substantial evidence supports her determination that Alexander was not disabled, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's denial of Alexander's application.

**I.   BACKGROUND**

Alexander applied for DIB on August 4, 2021. Soc. Sec. Admin. R. (hereinafter "Tr.") ECF No. 9-1 at 177. He alleged that his disability began on May 4, 2021. Tr. 182 (ECF No. 9-1). In his Brief, he explains that he is disabled due to the combined effects of degenerative disc disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome, degenerative joint disease of the left knee, bilateral plantar fasciitis, peripheral neuropathy, migraine headaches, deep vein

thrombosis ("DVT"), obesity, and the resulting effects of these conditions. ECF No. 14 at 6. The Commissioner denied Alexander's application and his request for reconsideration. Tr. 80-84, 90-94 (ECF No. 9-1).

Alexander challenged the Commissioner's denial in a hearing before an ALJ (Tr. 29-51) (ECF No. 9-1), who affirmed the Commissioner's decision. Tr. 14-24 (ECF No. 9-1). He appealed the decision to the AC (Tr. 172) (ECF No. 9-1), which issued an Unfavorable Decision. Tr. 5-10 (ECF No. 9-1). "[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Alexander then filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g). ECF No. 1.

## II.    STANDARD OF REVIEW

Title II of the SSA governs the DIB program. *See* 42 U.S.C. §§ 401-434. Claimants seeking benefits must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). SGA is work that "involves doing significant physical

or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers his past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was [SGA], and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III. ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. Tr. 17- 24 (ECF No. 9-1). First, the ALJ found that Alexander had not engaged in SGA from his alleged onset date through his date last insured. *Id*. at 17. Second, the ALJ found four severe impairments: cervical and lumbar degenerative disc disease, bilateral carpal tunnel syndrome, DVT, and obesity. *Id*. Third, the ALJ identified no impairment or combination of impairments that qualified under the federal regulatory list. *Id*. at 18-19.

The ALJ then assessed Alexander's RFC, finding that through the date last insured, he

> had the [RFC] to perform light work as defined in 20 CFR 404.1567(b), with the following additional limitations: combined standing and walking for 4 hours in an 8-hour day; occasionally push and/or pull with the right lower extremity; occasionally use foot controls with the right lower extremity; limited to occasional climbing of ramps and stairs; no climbing of ladders, ropes, or

4

>scaffolds; occasionally balance (per Selected Characteristics of Occupations (SCO), kneel, crouch, crawl, and stoop; frequently reach, handle, and finger bilaterally; should have no work around hazardous moving machinery, around excessive vibration, or at unprotected heights; and avoid working with sharp objects such as knives.

*Id*. at 19. After reviewing evidence in the record, the ALJ found that the evidence is "consistent with an absence of significant sitting, standing, and walking limitations, and with some degree of limitation on lifting, carrying, pushing, and pulling." *Id*. at 21. The ALJ "further limited the claimant exertionally (beyond, that is, the limitation to light work), including to four hours' standing and walking . . ." *Id*.

At step four, the ALJ determined that "[t]hrough the date last insured, the claimant was unable to perform any past relevant work." *Id*. at 22. "[B]ased on the exertional demands of these occupations, the [ALJ found] that the claimant cannot perform these occupations given his [RFC], and therefore cannot perform any [PRW]." *Id*.

At step five, the ALJ found that "[t]hrough the date last insured, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed." *Id*. The ALJ explained that "if the claimant had the [RFC] to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.14." *Id*. at 22-23. "However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations." *Id*. at 23.

As part of the step five analysis, the ALJ described the efforts she took during the hearing to discern the impact of these limitations on the number and type of jobs available to Alexander. "To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the [ALJ] asked the vocational expert ["VE"] whether jobs exist in

the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id*. The ALJ then summarized the VE's testimony:

> The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as the following, all light occupations with an SVP of 2: marker, DOT #209.587-034, with about 9,700 positions in the national economy (reduced from 136,000 due to the standing and walking limits); routing clerk, DOT #222.687-022, with about 39,700 positions in the national economy (reduced from 117,000 due to the standing and walking limits); and collator operator, DOT #208.685-010, with about 24,000 positions in the national economy (reduced due to the standing and walking limits).

*Id*.

At step five, the ALJ also addressed the extent to which the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles ["DOT"]." *Id*. The ALJ found the testimony consistent, except that the VE's "hypothetical individual could perform the above three light occupations despite" standing and walking limitations of four hours, and "the DOT does not specifically address reduced stand/and or walk at light; does not distinguish between left-versus right-side task performance, nor between types of climbing; and … does not address sharp objects." *Id*. The ALJ recognized that "the [VE] testified based on her professional education, training, research, and/or experience, and [accepted] those portions of her testimony, in preference over the DOT, along with the rest of her testimony." *Id*.

Alexander asserts that the ALJ erroneously found at step 5 that he could perform the jobs of a marker, routing clerk, and collator operator. ECF No. 14 at 9. He also briefly asserts that substantial evidence did not support the ALJ's RFC and that his capacity should have been listed as "sedentary" rather than "light" work. *Id*. at 16-17. Because of these errors, Alexander requests that the Court reverse the ALJ's decision fully in his favor. *Id*. at 17. In the alternative, he requests

6

that the Court reverse and remand the case to the Commissioner to perform additional analysis as detailed in his Brief. *Id*. at 17-18.

The Commissioner responds that "the ALJ never found that [Alexander] could perform the 'full range' of light work," and that she recognized that Alexander was "limited to standing or walking for up to 4 hours per 8-hour workday." ECF No. 17 at 5. The Commissioner notes that based upon that limitation, and equating it with "a sit/stand option at the light level of exertion," the VE found that Alexander was capable of being a marker, routing clerk, and collator operator, though with fewer available jobs in the national economy due to that limitation. *Id.* at 5-6. Finally, the Commissioner also argues that the ALJ based her determination that Alexander was not disabled on the testimony of the VE, which she was well within her discretion to do. *See, e.g., id*. at 7.

### A. The parties agree Alexander could not perform the full range of light work.

Alexander argues that as defined in the DOT, the jobs that the ALJ found that he could do are characterized as "light work," but "light work" requires the ability to stand for at least six hours (per SSR 83-10), and he can only stand for four. ECF No. 14 at 10-12; SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983) (hereinafter SSR 83-10). Therefore, Alexander argues that he could not perform those jobs as defined in the DOT and SSR.

The record is clear that the ALJ did not overlook the fact that Alexander cannot perform the full range of light work as defined in the DOT and SSR. Instead, the ALJ recognized that Alexander had "additional limitations," such as only being able to stand for four hours. Tr. 23 (ECF No. 9-1). The key questions, addressed below, are whether the VE took those limitations into account, and whether the VE's testimony created a conflict with the DOT that the ALJ did not resolve correctly.

### B. The VE's equating Alexander's limitations with an at will sit/stand option does not require reversal.

Alexander argues that it was inappropriate for the ALJ to take a sit/stand option into account when determining whether jobs were available in the national economy that Alexander could perform, given that there was no RFC finding that he needed a sit/stand option. *See, e.g.*, ECF No. 14 at 14. The Commissioner argues that this assertion is erroneous. ECF No. 17 at 6-7.

SSR 83-12 explains that "in some disability claims, the medical facts lead to an assessment of RFC which [is] compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing," i.e., the person must have a sit/stand option. SSR 83-12, 1983 WL 31253, at *4 (S.S.A. 1983) (hereinafter SSR 83-12). "The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting." *Id*. "Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." *Id*.; *see also Scott v. Shalala*, 30 F.3d 33, 34 (5th Cir. 1994) (quoting this portion of SSR 83-12); *Roberson v. Colvin*, No. 2:13–CV–197, 2015 WL 1408925, at *8 (N.D. Tex. Mar. 27, 2015) (quoting this portion of SSR 83-12). SSR 96-9p also addresses the issue of alternating between sitting and standing, but only in the context of sedentary work, rather than light work. SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. 1996) (hereinafter SSR 96-9p); *see also Roberson*, 2015 WL 1408925, at *8 ("SSR 96-9p applies only to the need to specify the frequency of alternating sitting and standing when considering the erosion of the occupational base of unskilled sedentary jobs.").

When an "individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the

sufficiency of the remaining occupational base to support a conclusion as to disability." SSR 83-12 at *3. "Accordingly, [VE] assistance is advisable for these types of cases." *Id.; see also Jones v. Apfel*, 174 F.3d 692, 693-94 (5th Cir. 1999) (Commissioner did not err in "considering the opinion of the [VE]" that "specific jobs existed that [plaintiff] could perform and that would accommodate [plaintiff's] need to alternate between sitting and standing...").

A VE provides additional expert guidance that the DOT cannot because a "[VE] is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields v. Bowen*, 805 F.2d 1168, 1170-71 (5th Cir. 1986). After all, "the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey,* 230 F.3d at 145. If "…the claimant suffers from additional limitations that make the Medical-Vocational Guidelines inapplicable, the Commissioner must rely upon the services of a [VE] or similar evidence." *Id.* Ultimately, "the ALJ may rely upon the [VE's] testimony provided that the record reflects an adequate basis for doing so." *Id*. at 146.

After reviewing the relevant regulations and case law, the undersigned finds that the VE's use of a sit/stand at will limitation rather than a four-hour standing limitation in this case was not erroneous. Initially, the Court notes that "SSR 00–4p clarifies that the DOT lists the *maximum* requirements for a position as it is generally performed, not the full range of requirements." *Haas v. Barnhart*, 91 F. App'x 942, 948 (5th Cir. 2004). And as the Commissioner notes, the Fifth Circuit has found that the DOT "…simply gives a general description of the [job] duties involved," and the VE "…is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." ECF No. 17 at 7 (citing *Carey v. Apfel*,

9

230 F.3d 131, 145 (5th Cir. 2000)). The VE was within her authority to respond to the ALJ's hypothetical questions and consider Alexander's functional limitations in determining whether he was capable of performing any available jobs in the national economy and explaining the extent of available jobs. The ALJ has latitude to rely on the VE to determine the implications for the occupational base when a claimant has "unusual limitation of ability to sit and stand," or whose "exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work." SSR 83-12 at *4, *3.

Even if the VE's analysis of the jobs available to Alexander was erroneous, it was harmless error at most. First, it is undisputed that Alexander is not capable of prolonged standing. People who need a sit/stand option at will are not capable of prolonged standing, and they also are not capable of prolonged sitting. SSR 83-12. The VE's testimony referencing a sit/stand option at will shows that an appreciable number of jobs available in the economy as a marker, routing clerk, or collator operator were available to a person with limitations on both standing and sitting. Tr. at 51 (ECF No. 9-1). Therefore, the VE's testimony also shows that someone with Alexander's limitations on standing could perform an appreciable number of jobs, including as a marker, routing clerk, or collator operator. Accordingly, any error that the VE made in equating a stand option at will with a four-hour limitation on standing would be harmless.

Second, to the extent that Alexander argues that the VE's response to the ALJ's hypothetical was defective, case law imposes a reasonableness requirement to defective hypothetical questions; arguably, then, courts can extend that reasoning and impose a reasonableness requirement to defective answers to hypothetical questions. *Cf. Lewis v. Colvin*, No. 3:14cv137–CWR–LRA, 2015 WL 5224366, at *6 (S.D. Miss. July 16, 2015) ("… the Court is not persuaded that the ALJ's failure to pose a hypothetical quantifying the hours that Plaintiff

10

could sit and stand constitutes reversible error in this case."); *see also Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (explaining when a defective hypothetical question creates grounds for reversible error). Here, the VE reasonably incorporated the limitations described in the ALJ's hypothetical by responding with figures relating to a sit/stand option when asked about a four-hour standing limitation. There is no reversible error on that point.

> C. **The VE's assessment that a four-hour standing limitation was roughly equivalent to an at will sit-stand option created a conflict between the VE's testimony and the information in the DOT that the ALJ addressed.**

The parties agree that the VE's testimony created a conflict with the DOT. Alexander notes "there were conflicts between the VE's testimony and the information contained in the *DOT* and *SCO*." ECF No. 14 at 10. The Commissioner similarly recognizes that the VE's testimony "did not completely square with the job definitions in the DOT." ECF No. 17 at 9.

The Fifth Circuit recognizes several types of conflicts in this context. It has

> distinguished between 'actual,' 'direct,' 'obvious,' and 'facial' conflicts on the one hand (*e.g.*, differences between the DOT and the VE's testimony with regard to skill or exertional level of a job), and 'alleged,' 'indirect,' and 'implied' conflicts on the other hand (*e.g.*, the [VE's] testimony that [the claimant] could perform jobs that required 'some ability to finger and handle things[,]' notwithstanding the fact that he had only one hand).

*Bailey v. Saul*, 853 F. App'x 934, 937 (5th Cir. 2021). Although the Fifth Circuit in *Carey* limited a litigant's ability to raise implied conflicts on appeal when he did not raise the conflict in the ALJ hearing (230 F.3d at 146-47), the conflict here is a direct conflict rather than an implied conflict. *See Huey v. Colvin*, No. 3:14-CV-2861-P (BH), 2015 WL 5771818, at *7 (N.D. Tex. Sept. 4, 2015) ("A direct conflict may arise when . . . the VE's testimony creates a conflict between the ALJ's RFC determination and the description of the jobs in the DOT."), *rec. adopted*, 2015 WL 5771818 (N.D. Tex. Sept. 30, 2015).

11

The ALJ resolved this conflict in her decision by explaining that "the [VE] testified based on her professional education, training, research, and/or experience," and the ALJ "accept[ed] those portions of her testimony, in preference over the DOT, along with the rest of her testimony." Tr. 23 (ECF No. 9-1). Thus, she "(1) satisfied [her] duty to obtain a reasonable explanation from the VE concerning the conflict, and (2) sufficiently resolved the conflict in [her] written decision." *Sylvia A. v. Kijakazi*, 5:21-CV-076-M-BQ, 2022 WL 3970062, at *6 (N.D. Tex. Aug. 8, 2022), *rec. adopted*, 2022 WL 3974505 (Aug. 31, 2022); *see generally* SSR 00-4p, 2000 WL 1898704 (S.S.A. 2000) (hereinafter SSR 00-4p).

First, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the [*DOT* and *SCO*]." SSR 00-4p, at *1; *see also Bailey,* 853 F. App'x at 937 (explaining that an ALJ has an affirmative responsibility to ask about possible conflicts between the VE and the DOT before relying on VE evidence to support a "not disabled" determination); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (same); SSR 00-4p, at *2 ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, at *2; *see also Sylvia A.*, 2022 WL 3970062, at *5 (same).

Here, the ALJ inquired on the record about the potential inconsistency as to whether Alexander could still perform several jobs categorized as light work despite only being able to stand for four hours rather than six. Tr. at 50-51 (ECF No. 9-1) (conversation surrounding the ALJ's question, "And that's per DOT?"); *Wilson v. Saul*, No. 4:20-cv-00319-O-BP, 2021 WL

12

1523905, at *9 (N.D. Tex. Jan. 22, 2021) ("The ALJ complied with his duty under SSR 00-4p by then asking the VE twice, on the record, whether his testimony conformed to the DOT."), *rec. adopted*, 2021 WL 972551 (N.D. Tex. Mar. 16, 2021).

This question then elicited a brief and general explanation from the VE: "The DOT doesn't address that limitation. My testimony is based on my knowledge, education, training, and experience, as well as data provided by the Bureau of Labor Statistics." *Id.*; *see also Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) ("Thus, the [VE] relied on his expertise to arrive at the conclusions that he gave to the ALJ, and he explained how he arrived at his conclusions.").

This Court allows ALJs to rely on the VE's experience in such a manner. For example, the Court most recently explained, "The VE testified that his opinion was based on professional knowledge and experience." *A.M. v. O'Malley*, No. 4:23-CV-1091-BR, 2024 WL 758537, at *7 (N.D. Tex. Feb. 22, 2024). "The ALJ accepted this explanation for the conflict and relied on the VE's testimony as to which jobs Plaintiff is capable of performing." *Id*. "Therefore, the Court finds that the ALJ did not err in relying on the VE's testimony to determine which jobs Plaintiff was capable of performing." *Id*. Many other cases take a similar approach. *See Charles M. Linward v. Kijakazi*, 3:21-cv-2300-BN, 2022 WL 17182077, at *5 (N.D. Tex. Nov. 22, 2022) (finding that the ALJ properly relied on the VE's training, education, and experience in resolving a conflict); *Wilson v. Saul*, No. 4:20-cv-00319-O-BP, 2021 WL 972551, at *7 n. 2 (N.D. Tex. March 16, 2021) ("the ALJ properly resolved even a potential conflict in favor of the VE's testimony based on the VE's experience."); *Cf. Sylvia A.,* 2022 WL 3970062, at *6 (N.D. Tex. Aug. 8, 2022) (finding error because "the VE did not cite an alternative publication or otherwise state he was relying on his personal experience or expertise."); *Heard v. Berryhill*, No. 7:17-cv-00052-O-BP, 2018 WL 7135223, at *3 (Apr. 12, 2018) ("…the ALJ properly asked the VE whether the VE's opinions are

based on her professional qualifications and asked the VE the requisite hypothetical questions regarding [the claimant's] sitting and standing limitations in reaching his ultimate RFC determination."), *rec. adopted*, 2018 WL 2010274 (N.D. Tex. Apr. 30, 2018). Therefore, the undersigned finds that the ALJ here elicited a reasonable explanation, as SSR 00-4p requires.

Second, an ALJ must "[e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p; *see also Sylvia A.*, 2022 WL 3970062, at *5 (same). "The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified." *Id*. "If the ALJ resolves the conflict in favor of the VE, the ALJ must articulate a plausible reason for accepting testimony that conflicts with the DOT so that the hearing decision is susceptible to meaningful judicial review." *Dunn v. Colvin*, No. 4:12-CV-496-Y, 2023 WL 4756377, at *6 (N.D. Tex. Sept. 4, 2013). Although her explanation was somewhat brief, the ALJ adequately explained how she resolved the identified conflicts: "As to these matters, the undersigned finds that the [VE] testified based on her professional education, training, research, and/or experience, and accepts those portions of her testimony, in preference over the DOT, along with the rest of her testimony." Tr. 23 (ECF No. 9-1). The ALJ simply recapitulated the VE's reasonable explanation, and therefore, the ALJ's recapitulation also was reasonable.

Overall, "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict." SSR 00-4p; *see also Carey*, 230 F.3d 131 at 145 ("… the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job."). Instead of simply assuming the DOT or the VE prevails over the other, "[t]he adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT

14

information." SSR 00-4p; *see also Carey*, 230 F.3d at 146-47 (finding "neither the DOT nor the vocational expert testimony is per se controlling" and calling for a determination of "whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.") Although the ALJ did not explain her reasoning in detail, she found the VE's explanation of the conflict to be reasonable. Tr. 23 (ECF No. 9-1). There is no error in her analysis on this point.

> **D.  Substantial evidence supported the ALJ's RFC, and any errors in the ALJ's analysis did not prejudice Alexander.**

Alexander explains in a footnote at the end of his brief that his "RFC should have been defined as sedentary under the Social Security Regulations due to his limited ability to stand and walk regardless of the VE's testimony." ECF No. 14 at 16 n. 4. "Had the ALJ properly found the Plaintiff could not perform work at the light level of exertion, a different outcome would have occurred." *Id*. at 16-17. Therefore, Alexander argues that the ALJ's determinations prejudiced him. The Commissioner replies only briefly that "despite his argument to the contrary, [Alexander] has not demonstrated that he was limited to sedentary rather than a reduced level of light work." ECF No. 17 at 9. Alexander does not elaborate further on this argument in reply and does not explain why he was limited to "sedentary" instead of a reduced range of light work. ECF No. 18 at 10.

Unlike his other arguments, Alexander here maintains that substantial evidence does not support the ALJ's determination that he had the RFC to perform a limited range of light work. However, substantial evidence relating to Alexander's ability to stand and walk supports the finding.

The ALJ cites record evidence that Alexander had limited ability to stand, walk, and sit. For example, a Function Report quoted Alexander stating that due to his plantar fasciitis, DVT in his right leg, neuropathy in his right foot causing paralysis of the sciatic nerve, and his inverted

15

disc, he was unable to walk for more than ten to fifteen minutes without sitting or lying down. Tr. 20, 224 (ECF No. 9-1). He also explains that he could not sit for longer than fifteen minutes before his right leg goes numb and his lower back starts causing him pain. Tr. 20, 224 (ECF No. 9-1). In a later function report the ALJ cited, Alexander explains that he can only stand for ten minutes and sit for fifteen. Tr. 246 (ECF No. 9-1). When explaining why he did not do house or yard work, Alexander wrote, "I'm unable to stand and walk," and he listed limitations involving standing, walking, and sitting. Tr. 20, 226, 229 (ECF No. 9-1). He states that he cannot walk more than half a block before needing to take a break. Tr. 224 (ECF No. 9-1).

The ALJ also cited to record evidence from the hearing demonstrating that Alexander has medical issues with his back and legs. For example, when asked why he stopped working in security, Alexander answered at the hearing, "I started having issues with my feet and my leg and my back." Tr. 20, 35; *see also* Tr. 37-38 (ECF No. 9-1). Alexander also reiterated that he could not stand for longer than about ten minutes. Tr. 40 (ECF No. 9-1).

The ALJ also mentioned medical records demonstrating Alexander's DVT in his right leg. In particular, she cited a 2021 ultrasound demonstrating nonocclusive chronic DVT within the right distal femoral and popliteal veins. Tr. 143 (ECF No. 9-2). However, the ALJ noted that edema is often not present. *See, e.g.*, Tr. 330, 385 (ECF No. 9-1).

The ALJ cited other portions of the record demonstrating that Alexander has back and/or spine problems. *See, e.g.*, Tr. at 221, 240, 260 (ECF No. 9-1). For example, she discussed the results of an October 2019 lumbar MRI demonstrating disc desiccation, bulging, and protrusion. Tr. 20 (ECF No. 9-1), 154 (ECF No. 9-2). Other portions of the record the ALJ cited reflect that Alexander has issues with his legs and/or feet. Tr. at 239, 241, 260 (ECF No. 9-1). However, as the ALJ noted (Tr. 20), other portions of the record push against this somewhat. For instance,

16

Alexander's gait was listed as "normal" in medical records. *See, e.g.,* Tr. 330 (ECF No. 9-1). The ALJ also cited to the findings of the state medical consultants, finding them "partially persuasive." Tr. 21 (ECF No. 9-1). Although not explicitly cited by the ALJ, one such finding was that Alexander could stand or walk for about six hours in an eight-hour workday and sit with normal breaks for about six hours in an eight-hour workday. Tr. 59 (ECF No. 9-1).

Accordingly, although it is clear from the record that Alexander suffers from various issues involving his legs and back, substantial evidence supports the ALJ's finding that "the medical evidence is not entirely consistent with the claimant's allegations of debilitating symptoms." Tr. 20 (ECF No. 9-1). Similarly, the record supports the ALJ's observation that Alexander's "exertional allegations, including the alleged need to lie and alleged need to elevate the legs, are inconsistent with the findings of normal strength, normal gait, etc., [and] the rarity of edema findings . . ." Tr. 20 (ECF No. 9-1). These records are substantial evidence supporting the ALJ's determination that Alexander could stand for up to four hours in the course of a workday. Tr. 59 (ECF No. 9-1).

Therefore, substantial evidence underlies the ALJ's determination that Alexander can perform a limited range of light work rather than being restricted to sedentary work. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision," but as detailed above, credible evidentiary choices and medical findings support the ALJ's RFC determination. *Harris*, 209 F.3d at 417. *Id.*

Furthermore, as explained above, the VE's reference to a sit/stand at will option in her analysis of available jobs rather than a four-hour standing limitation did not prejudice Alexander. Accordingly, any errors that the ALJ or VE made in Alexander's cases did not prejudice him. *See Juan S. v. Kijakazi*, No. 3:20-cv-03706-S-BT, 2022 WL 4098033, at *3 (N.D. Tex. Aug. 18, 2022)

("To establish prejudice, Plaintiff must show that the ALJ's failure to properly resolve the conflict in the VE's testimony and the DOT casts doubt onto the existence of substantial evidence supporting the disability determination.").

## IV. CONCLUSION

Because the ALJ employed proper legal standards and substantial evidence in the record supports his conclusions, Judge O'Connor should **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on July 10, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

18